IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION

| | | |
|---|---|---|
| IN RE: | : | CHAPTER 11 |
| | : | |
| ANTHONY B. FREEMAN, | : | CASE NO.  09-12732 |
| | : | |
| DEBTOR. | : | JUDGE W. H. DRAKE |
| | : | |

## **DEBTOR'S FIRST AMENDED PLAN OF REORGANIZATION**

This First Amended Plan of Reorganization is proposed by Anthony B. Freeman, Debtor and Debtor-in- Possession ("Freeman" or "Debtor"), for the resolution of its outstanding creditor claims.  All creditors are encouraged to consult the Disclosure Statement before voting to accept or reject this Plan.  The Disclosure Statement contains a discussion of the Debtor's history, a description of its property and a summary and analysis of the Plan.

## **Article I: Definitions**

### A. **Defined Terms.**

The following terms have the following meanings (such meanings to be equally applicable to both the singular and plural forms of the terms defined) whenever used in the Plan.

1.      *Administrative Claim*: Administrative Claim means any Claim for any cost or expense of administration in connection with the Chapter 11 case, in accordance with § 503(b) of the Code, including, without limitation:

(a)      The actual, necessary costs and expenses of preserving the Debtor's estate and of operating the business of the Debtor (other than such claims or portions thereof which, by their express terms, are not due or payable by the Effective Date);

1

(b)     The full amount of all claims for allowances of compensation for legal or other professional services or reimbursement of costs and expenses under § 330 or § 503(b) of the Code or otherwise allowed by the Bankruptcy Court; and

(c)     All fees and charges assessed against the Debtor's estate under Chapter 123 of Title 28, United States Code.

2.      *Allowed Claim or Allowed Interest*: Allowed Claim or Allowed Interest means a claim against the Debtor to the extent that:  (a) a proof of such claim or interest was (i) timely filed, or (ii) deemed filed pursuant to § 1111(a) of the Bankruptcy Code; and (b)(i) which is not objected to, or (ii) which is allowed (and only to the extent allowed) by an order of the Bankruptcy Court that has become final and not subject to possible appeal, review, certiorari or stay.

3.      *Bankruptcy Code or Code*: Bankruptcy Code or Code means Title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. as amended.

4.      *Ballot*:  Ballot means the written instrument mailed by the Debtor to the holders of impaired Claims by which such holders may vote to accept or reject the Plan.  The Ballot must be received by counsel for the Debtor on or before the date fixed in the order approving the Disclosure Statement.

5.      *Case:* Case means the bankruptcy case of the Debtor, Chapter 11 Case No. 09-12732, presently pending before the United States Bankruptcy Court for the Northern District of Georgia, Atlanta Division.

6.      *Causes of Action*: Causes of Action means any and all actions, causes of action, suits, accounts, controversies, agreements, promises, rights to legal remedies, right to equitable remedies, right to payment and claims, whether known or unknown, reduced to judgment, not

2

reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured, and whether asserted or assertable, directly or derivatively, in law, equity or otherwise.  Causes of Action includes any claims specifically described in the Disclosure Statement or others listed on Schedule B of the Debtor's Schedule of Assets and Liabilities, incorporated herein by this reference.

7.      *Claim*:  Claim means any right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured, as defined in Section 101(5) of the Code, arising before the Petition Date.

8.      *Claimant*:  Claimant means the holder of a claim.

9.      *Class*:  Class means a grouping of substantially similar claims or interests as designated in Article III of the Plan.

10.     *Court*:  Court or Bankruptcy Court means the United States Bankruptcy Court for the Northern District of Georgia, Atlanta Division, or such other court as may have jurisdiction over this Chapter 11 case and, with respect to any particular proceeding arising under, in or relating to this Chapter 11 case, any other court which may have jurisdiction over such proceeding.

11.     *Creditor:*  Creditor means all entities with claims against the Debtor or the Estate.

12.     *Debtor or Freeman*:  Debtor or Freeman means, Anthony B. Freeman.

13.     *Debtor-in-Possession*:  Debtor-in-Possession means the Debtor, when exercising its rights, powers, and duties under Section 1107(a) of the Code and all other Sections of the Code made applicable thereby.

14.    *Disclosure Statement*:  Disclosure Statement means the Disclosure Statement filed concurrently herewith and as ultimately approved by the Court.

15.    *Disputed Claim*:  Disputed Claim means a claim which has been listed as disputed, contingent or unliquidated on Debtor's schedules or which Debtor has asserted an objection to which is not an "Allowed Claim."

16.    *Effective Date*:  Effective Date means the date thirty (30) days following entry of an order by the Court confirming the Plan (the "Confirmation Date").

17.    *Estate*:  Estate means the bankruptcy estate created upon commencement of the Case pursuant to Section 541(a) of the Code.

18.    *Executory Contracts and Unexpired Leases*:  Executory Contracts and Unexpired Leases means those contracts and leases to which the Debtor is a party that have not been assumed or rejected by the Debtor-in-Possession pursuant to Section 365 of the Code by motion or in the Plan nor otherwise terminated before the Effective Date.

19.    *Final Confirmation*:  Final Confirmation means the date upon which the order entered by the Court confirming the Plan becomes a Final Order.

20.    *Final Order*:  Final Order means an order of the Court that has been entered and either: the time for appeal from such entered order has expired with no appeal having been filed timely; or any appeal that had been filed timely has been dismissed or otherwise finally determined.

21.    *General Unsecured Claims*:  General Unsecured Claims means unsecured claims that are not Administrative Claims, Tax Claims, Wage Claims, any other type of Priority Claim or claims not otherwise separately classified in the Plan.

4

22. *Impaired*:  Impaired shall have the meaning provided in Section 1124 of the Code.

23. *Lien*:  Lien has the meaning provided by Section 101(37) of the Code.

24. *Plan*: Plan means this Plan of Reorganization proposed by Anthony B. Freeman, including any amendment or modification made in accordance with the applicable provisions of the Code.

25. *Order of Confirmation:*  Order of Confirmation means the order of the Court confirming the Plan pursuant to Section 1129 of the Code.

26. *Petition Date*:  Petition Date means October 6, 2008, the date upon which the voluntary bankruptcy petition was filed by the Debtor.

27. *Priority Claim*:  Priority Claim means any Claim entitled to priority treatment pursuant to Section 507 of the Code.

28. *Property of the Estate*:  Property of the Estate has the meaning provided by Section 541 of the Code.

29. *Reorganized Debtor*: Reorganized Debtor means Debtor, Anthony B. Freeman, following the Effective Date.

30. *Secured Claim*:  Secured Claim means any claim secured by a lien on property of the Estate to the extent of the value of the collateral as provided in Section 506 of the Code, which lien was perfected in accordance with applicable law prior to the Petition Date.

31. *Secured Creditor*:  Secured Creditor means National City Mortgage, National City Bank, Wachovia Bank, N.A., Aurora Loan Services, and any other creditor having a secured claim against the property of the Estate.

32. *Tax Claim*:  Tax Claim means any claim entitled to priority treatment pursuant to Section 507(a)(8) of the Code.

**B**. **Undefined Terms.**

A term used in the Plan and not defined herein which is defined in the Bankruptcy Code or Rules has the meaning ascribed to such term in the Bankruptcy Code or Rules.

## Article II: Classification of Claims and Interests

Unclassified Claims are those claims that are not considered impaired and holders of such claims do not vote on the Plan.  The following are the Unclassified Claims as defined herein:

1.      Administrative Expenses:   Administrative Claims shall include those claims arising from the administering of Debtor's chapter 11 case, including attorneys' fees, accountants, appraisers, and other professionals retained by Debtor prior to the filing of the petition and/or authorized by Court order.

All Allowed Claims and Allowed Interests are placed in the following classes.

**A.  Secured Claims:**

1.      *Class 1:* Class 1A consists of the Allowed Claims of the United States Internal Revenue Service that are entitled to priority pursuant to § 507(a)(8) of the Bankruptcy Code

2.      *Class 2A*:  Class 2A consists of the Allowed Claims of National City Mortgage secured by the Debtor's property located at 210 Standing Oak Place, Fairburn, GA (the "Standing Oak Place Property").

3.      *Class 2B*: Class 2B consists of the Allowed Claims of National City Bank secured by the Debtor's Standing Oak Place Property.

4.      *Class 2C*: Class 2C consists of the Allowed Claims of Wachovia Bank, N.A. secured by the Debtor's Standing Oak Place Property.

5.      *Class 2D:* Class 2D consists of the Allowed Claims of Aurora Loan Services secured by the Debtor's property located at 935 North Avenue, Atlanta, GA (the "North Avenue

Property").

**B.  General Unsecured Claims:**

*Class 3*:  Class 3 consists of general unsecured claims.

Classes 2A, 2B, 2C, 2D and 3 shall be considered separate for purposes of determining whether the Plan has been accepted by one impaired class.

### Article III:    Treatment of Certain Unclassified Claims

The holders of allowed Administrative Claims shall receive, on account of such claims, cash in the amount of such claims (i) as soon as practical on or after the Effective Date or (ii) at the option of the Debtor, in accordance with the ordinary business terms of the payment of such claims.  Professionals employed at the expense of the estate of the Debtor and entities who may be entitled to reimbursement or the allowance of fees and expenses from the estate of the Debtor, pursuant to § 330 or § 503(b)(2) to (6) of the Bankruptcy Code, shall receive cash in the amount awarded to such professionals and entities at such times and only in accordance with a final order entered pursuant to § 330 or § 503(b)(2) to (6) of the Bankruptcy Code.

Debtor estimates that $25,000.00 will be owed for Professional Fees through confirmation of the Plan.  To the extent Debtor's Professional Fees have not been paid in full, Professional Fees will be paid on the Effective Date of the Plan or according to separate written agreement or court order if such fees have not been approved by the Court on the Effective Date of the Plan.  Debtor does not estimate that any amounts are owed for expenses arising in the ordinary course of business after the petition date, other administrative fees, and U.S. Trustee fees.  To the extent such expenses have not been paid, these expenses will be paid on the Effective Date of the Plan or in accordance with a written agreement or order of the Court.

### Article IV:    Designation and Treatment of Unimpaired Classes

None.

<u>**Article V:**</u>      <u>**Treatment of Impaired Claims and Interests**</u>

**A. General.**

All classes of claims and classes of interest are impaired under the Plan.   All impaired classes of claims and classes of interest shall receive the distributions set forth in this Article on account of and in complete satisfaction of all such Allowed Claims (and any interest accrued thereon) and Allowed Interests.  Without limiting the foregoing and effective upon the Effective Date, each creditor and each equity security holder (or its successor) shall be deemed to have assigned to the Debtor and all such parties shall be deemed to have waived, relinquished and released any and all of their rights and claims against the Debtor (other than as provided for in the Plan or the Court's order confirming the Plan).

**B.      <u>Secured Claims</u>**

1. *Class 1A (Priority Tax Claims):*  The Internal Revenue Service has filed a Proof of Claim in the amount of $9,730.39, which was subsequently amended to $0.00.  To the best of Debtor's knowledge, no sums are owed to the IRS for pre-petition tax claims and taxes are current on a post-petition bases.  To the extent Class 1A Claims have not been satisfied prior to the effective date, this claim shall be paid within thirty (30) days of the Effective Date of the Plan.

2. *Class 2A (National City Mortgage):* The holder of the Class 2A Claim shall retain the lien securing its claim, but all prepayment restrictions, penalties, assumption fees and prohibitions on prepayment, assumption, sale or encumbrance shall be deleted therefrom. The secured claim of National City Mortgage shall be deemed to be $277,338.75 (which includes the principal balance of $274,200.49 plus the arrearage of $3,138.26 per NCM's Proof of Claim), less any post-petition payments made to NCM during the pendency of this case.  NCM shall be

8

paid the amount of the Allowed Claim, together with simple interest at the rate of 6.375% per annum, according to the terms of the pre-petition loan documents between NCM and Debtor, except as modified herein on the Effective Date of the Plan.  The monthly payments will be in the amount of $2,681.98 until the loan is paid in full.  Upon the Effective Date, the NCM loan shall be deemed reinstated, all defaults cured, with the provisions of the Plan to be controlling. The first installment payment under the Plan shall be made on the first day of the first month after the Effective Date**.**

3.      *Class 2B (National City Bank):* The secured claim of National City Bank appears to be in the amount of $120,241.21 (which includes the principal balance of $113,975.01 plus the arrearage of $6,266.20 per NCB's Proof of Claim), less any post-petition payments made to NCB during the pendency of this case which shall be credited against NCB's secured claim and applied to principal and interest at the non-default rate under the loan documents.  An appraisal of the Debtor's property dated 12/16/2008 indicates that the property at issue had an estimated value of $298,500.00.  Therefore NCB's lien is completely undersecured.  The holder of the Class 2B claim shall be crammed down and deemed the equal to the value of the Standing Oak Property, less the Allowed amounts of the Class 2A claim, less any post-petition payments made to NCB during the pendency of this case which shall be credited against NCB's secured claim and applied to principal and interest at the non-default rate under the loan documents (the "Cramdown Amount").   The Cramdown Amount is estimated to be $0.00, therefore, NCB's claim shall be treated as a wholly unsecured claim and upon confirmation of the Plan NCB shall retain no lien against the Standing Oaks Property. Debtor may also file a Complaint to Avoid NCB's lien against the Standing Oaks Property.

4.      *Class 2C (Wachovia Bank, N.A.):* The secured claim of Wachovia Bank, N.A. appears to be deemed to be $32,109.60 pursuant to WB's Proof of Claim.    Therefore WB's lien is completely undersecured.  The holder of the Class 2B claim shall be crammed down and deemed the equal to the value of the Standing Oak Property, less the Allowed amounts of the Class 2A claim, less any post-petition payments made to WB during the pendency of this case which shall be credited against WB's secured claim and applied to principal and interest at the non-default rate under the loan documents (the "Cramdown Amount").     The Cramdown Amount is estimated to be $0.00, therefore, WB's claim shall be treated as a wholly unsecured claim and upon confirmation of the Plan WB shall retain no lien against the Standing Oaks Property. Debtor may also file a Complaint to Avoid WB's lien against the Standing Oaks Property.

5.      *Class 2D (Aurora Loan Services):* The holder of the Class 2D Claim shall retain the lien securing its claim, but all prepayment restrictions, penalties, assumption fees and prohibitions on prepayment, assumption, sale or encumbrance shall be deleted therefrom. The secured claim of Aurora Loan Services shall be deemed to be $53,234.05, less any post-petition payments made to ALS during the pendency of this case which shall be credited against ALS's secured claim and applied to principal and interest at the non-default rate under the loan documents.  Upon the Effective Date, the ALS loan shall be deemed reinstated, all defaults cured and the ALS Loan Documents shall be modified so as to be consistent with the terms of the Plan, as confirmed, with the provisions of the Plan to be controlling.  The first installment payment under the Plan shall be made on the first day of the first month after the Effective Date.

### C.      <u>Unsecured Claims</u>

*Class 3 (General Unsecured Claims):* The holders of Class 3 Allowed Claims shall be paid a pro rata distribution equal to 5.0% of their Allowed Claim, without interest, over a period

of five (5) years in equal monthly installments of $489.35 each commencing thirty (30) days from the Effective Date.

### D.  Cramdown.

In the event any of the above classes reject the Plan, it is anticipated that the Debtor will seek to obtain confirmation of the Plan notwithstanding the rejection pursuant to 11 U.S.C. § 1129(b).

## Article VI:   Means for Execution of the Plan

### A.  Source of Operating Funds.

Debtor's projections show that there will be sufficient net operating income to pay all administrative expenses and all classes of claims as provided under the Plan.

### B.  Debtor's Estate and Continuation of Debtor's Business

Debtor, as reorganized, will retain all property of the estate, excepting property which is to be sold or otherwise disposed of as provide for herein, executory contracts which are rejected pursuant to this Plan, and property transferred to creditors of Debtor pursuant to the express terms hereof.  Further details concerning the nature and scope of Debtor's means of funding the Plan and projected income may be found in the Disclosure Statement, which accompanies this Plan.

### C.  De Minimis Distributions.

Notwithstanding anything to the contrary herein, no distributions of cash shall be made hereunder in an amount less than $10.00. All cash not distributed pursuant to this provision shall vest in the Debtor free of any claim.

## Article VII:    Effect of Confirmation

Except as otherwise provided in the Plan or the Court's Order confirming the Plan (the

"Confirmation Order"), the confirmation Order acts as a discharge, effective as of the Effective Date, of any and all debts of the Debtor that arose at any time before the entry of the Confirmation Order, including, but not limited to, all principal and any and all interest accrued thereon, pursuant to § 1141(d)(1) of the Bankruptcy Code.  The discharge of the Debtor shall be effective as to each claim, regardless of whether a proof of claim thereof was filed, whether the claim is an Allowed Claim or whether the holder thereof votes to accept the Plan.

### Article VIII:   Retention and Enforcement of Claims

Pursuant to § 1123(b)(3) of the Bankruptcy Code, the Reorganized Debtor shall retain and may enforce any and all claims of the Debtor, except claims waived, relinquished or released in accordance with the Plan.

### Article IX:     Executory Contracts

All executory contracts of the Debtor are rejected pursuant to the provisions of §§ 365 and 1123 of the Bankruptcy Code.

### Article X:       Revesting

Except as provided for in the Plan or in the Confirmation Order, on the Effective Date the Reorganized Debtor shall be vested with all of the property of its estate free and clear of all claims, liens, charges and other interests of creditors arising prior to the Confirmation Date. Upon the Effective Date, the Reorganized Debtor shall operate free of any restrictions.

### Article XI:     Retention of Jurisdiction

Notwithstanding confirmation of this Plan, the Bankruptcy Court shall retain jurisdiction for the following purposes:

A.      Determination of the allowability of claims and interests upon objection to such claims by the Debtor, the Reorganized Debtor or any other party in interest.

12

B.      Determination of requests for payment of claims entitled to priority under §
507(a)(1) of the Bankruptcy Code, including compensation of parties entitled thereto.

C.      Resolution of controversies and disputes regarding the interpretation or
enforcement of the terms of the Plan, any of the instruments issued under the Plan or any other
documentation evidencing the terms of the Plan.

D.      Implementation of the provisions of the Plan and entry of orders in aid of
confirmation of the Plan, including, without limitation, appropriate orders to protect the
Reorganized Debtor.

E.      Entry of a final decree closing the Debtor's case.

## Article XII:    Event of Default

In the event of any default by Debtor under the Loan Documents, as amended or replaced
by this Plan, that is not cured within thirty (30) days following written notice, holders of allowed
secured claims, in their discretion, shall be entitled to proceed with foreclosure or any other
possessory remedies in accordance with state law.

## Article XIII:  Modification of Plan

1.      This Plan may be modified in accordance with Section 1127 of the Code upon
application of the Debtor, or corrected by the Debtor prior to Confirmation, without notice and a
hearing and without additional disclosure pursuant to Section 1125 of the Code provided that,
after notice to the United States Trustee, the Court finds that such modification does not
materially or adversely affect any creditor or class of creditors.

2.     After Confirmation of the Plan, the Debtor or the Reorganized Debtor may remedy any defect or omission, reconcile any inconsistencies in the Plan or in the Order of Confirmation, and/or effect such other substantive changes as may be necessary to carry out the purposes and intent of the Plan.  After Confirmation, the Debtor shall have the right to modify this Plan in accordance with Section 1127 of the Code.

### Article XIV:  Discharge of Debts and Discharge Injunction

*Discharge of Debts*:  Pursuant to section 1141(d)(5) of the Bankruptcy Code, except in limited circumstances, a discharge is not available to an individual debtor unless and until all payments have been made under the plan. Therefore, Debtor does not have a right to a discharge until all the plan payments have been made unless otherwise ordered by the Court pursuant to section 1141(d)(5) of the Bankruptcy Code. Debtors do not waive their right to seek entry of a discharge order before completion of all plan payments. In the event Debtors seek entry of a discharge order after the entry of a final decree, Debtors may reopen the Case for purposes of obtaining a discharge. Additionally, this paragraph shall not be construed as attempting to discharge any debt that is excepted from discharge pursuant to Bankruptcy Code sections 1141(d)(2) and 523(a)(1). Upon entry of an order granting Debtor a discharge pursuant to section 1141(d)(5) of the Bankruptcy Code, except as otherwise specifically provided in this Plan or in the Confirmation Order, the Distributions and rights that are provided in this Plan shall be in complete satisfaction, discharge, and release of all Claims, whether known on unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in Debtor or his Estate that arose prior to the Effective Date.

## <u>Article XV:  General Provisions</u>

1.      The Debtor shall request the Court to confirm the Plan pursuant to the provisions of Section 1129(b) of the Code with respect to any class that is deemed not to have accepted the Plan and any class that fails to accept the Plan.

2.      To the extent that the terms of the Plan are inconsistent with the terms of any agreement or instrument concerning any claim or interest, or any other matter, the terms of the Plan shall control.

3.      The Debtor shall execute such other documents and instruments as are necessary or appropriate to carry out the purposes of this Plan.

4.      In addition, and at any time, the Court may make such orders or give such direction as may be appropriate under Section 1142 of the Code.

5.      For purposes of determining the pro rata amount due to a holder of a claim in a particular class, the amount of Allowed Claims in that class shall be deemed to be the sum of all Allowed Claims in the class plus all Disputed Claims in the class.  In the event there is an objection to any claim receiving a distribution, then any distribution payable with regard to such claims shall be withheld, and reserve for payment shall be made in the full amount of such claims until such claims become Allowed Claims.  Distributions so reserved shall be held in a segregated account by the Reorganized Debtor (hereinafter the "Unpaid Claims Reserve").  At such time as such claims become Allowed Claims, the distribution payable with respect to such Allowed Claims shall be disbursed from the Unpaid Claims Reserve.

Dated this _3rd_ day of February, 2011.

Respectfully submitted,
Anthony B. Freeman
By__/s/ Anthony B. Freeman_____

**Prepared by:**
**ROGERS LAW OFFICES**
_/s/ Beth E. Rogers_____
Beth E. Rogers Georgia Bar No. 612092
C. Allen Yates, Georgia Bar No. 979656
The Equitable Building
100 Peachtree Street, Suite 1950
Atlanta, GA 30303
Phone: 770-685-6320
Fax:     678-990-9959
Attorneys for Debtor

16